# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Civil Action No. 20-cv-02881-NYW

ABADE IRIZARRY,

      Plaintiff,

v.

A. YEHIA,

      Defendant.

---

## MEMORANDUM OPINION AND ORDER ON MOTION TO DISMISS

---

Magistrate Judge Nina Y. Wang

      This matter comes before the court on Defendant's Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(6) (the "Motion to Dismiss" or "Motion") [#14, filed December 9, 2020]. The undersigned considers the Motion pursuant to 28 U.S.C. § 636(c) and the Order of Reference for all purposes [#17] and concludes that oral argument will not materially assist in the resolution of this matter. Accordingly, upon review of the Motion and the related briefing, applicable case law, and the entire docket, and being fully advised in the premises, I **GRANT** the Motion to Dismiss.

## BACKGROUND

      The court draws the following facts from the Complaint [#1] and presumes they are true for purposes of the instant Motion. Plaintiff Abade Irizarry ("Mr. Irizarry" or "Plaintiff") is a YouTube journalist and blogger who regularly publishes stories about police brutality and police conduct or misconduct. [#1 at ¶¶ 10, 24]. On May 26, 2019,[1] Mr. Irizarry was on the scene of a

---

[1] Plaintiff's Complaint does not indicate what year the alleged events took place in. However, the Complaint indicates that the traffic stop and the alleged constitutional violation occurred on Sunday, May 26. [#1 at ¶ 9]. The court takes judicial notice of the fact that May 26, 2019 fell on a Sunday, and of the fact that most recent year in which May 26 fell on a Sunday, other than 2019,

traffic stop of a third-party being conducted by the Lakewood Police Department in Lakewood, Colorado. [*Id.* at ¶ 12]. Mr. Irizarry was accompanied by three other "journalists/bloggers"—Eric Brandt ("Mr. Brandt"), Elijah Westbrook, and Michael Sexton. [*Id.* at ¶¶ 9-10]. Mr. Irizarry and the three other individuals began using cameras and cell phones to record the traffic stop "for later broadcast, live-streaming, premier[e]s, and archiving for their respective social media channel[s]." [*Id.* at ¶ 11]. Lakewood Police officers on the scene advised Defendant Ahmed Yehia ("Officer Yehia") that "four males had arrived on the scene and were video recording their D.U.I traffic stop." [*Id.* at ¶ 12]. Officer Yehia then arrived at the scene "in full regalia in a Marked cruiser, with every single light available on the cruiser turned on." [*Id.* at ¶ 13]. Officer Yehia exited his vehicle and positioned himself directly in front of Mr. Irizarry to obstruct Mr. Irizarry's camera's view of the field sobriety test that was occurring as part of the traffic stop. [*Id.* at ¶ 14].

Mr. Irizarry and Mr. Brandt began to "loudly criticize" Officer Yehia and voiced their disapproval of Officer Yehia's actions. [*Id.* at ¶ 16]. Officer Yehia then began to shine his flashlight into Mr. Irizarry's and Mr. Brandt's cameras, which "saturat[ed] the camera sensors." [*Id*. at ¶ 17]. Mr. Irizarry alleges that Officer Yehia continued to harass him and Mr. Brandt until a fellow police officer instructed him to stop. [*Id.* at ¶ 19]. Officer Yehia returned to his vehicle, "drove right at [Mr. Irizarry] and Mr. Brandt, and sped away" before turning around and "gunn[ing] his cruiser directly at Mr. Brandt, swerv[ing] around him, stopp[ing], [and] then repeatedly . . . blast[ing] his air horn at Mr. Irizarry and Mr. Brandt." [*Id.* at ¶¶ 20-21]. Officer

---

was 2013. *See* Fed. R. Evid. 201(b)(2) ("The court may judicially notice a fact that is not subject to reasonable dispute because it . . . can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned."); *see also Lopez v. Rivera*, No. 07-cv-650 WPJ/WDS, 2008 WL 11451558, at *3 (D.N.M. Apr. 10, 2008 ("The Court takes judicial notice of the fact that July 6, 2007 fell on a Friday."). Moreover, Defendant appears to agree that the incident in question occurred in 2019. *See* [#14 at ¶ 1]. Thus, the court proceeds in this matter with the assumption that the events in question occurred on May 26, 2019.

Yehia was then instructed to depart the scene.  [*Id.* at ¶ 22].[2]

On September 23, 2020, Mr. Irizarry filed this lawsuit against Officer Yehia, raising one claim under 42 U.S.C. § 1983 alleging a First Amendment violation.  [*Id.* at 4].  Mr. Irizarry asserts that Officer Yehia's actions "deprived [Plaintiff of] his right[] to freedom of the press secured by the [F]irst [A]mendment of the United States Constitution" and that Officer Yehia's conduct "constituted a blatant prior restraint on [Plaintiff's] right to free speech and free press."  [*Id.* at ¶¶ 27-28].  On December 9, 2020, Officer Yehia filed the instant Motion to Dismiss, arguing that Mr. Irizarry fails to state a claim upon which relief could be granted because Officer Yehia is entitled to qualified immunity. [#14 at 4].  Mr. Irizarry has responded in opposition to the Motion to Dismiss and Defendant has since replied.  [#29; #30].  Because the Motion is ripe for disposition, I consider the Parties' arguments below.

**LEGAL STANDARDS**

**I.      Rule 12(b)(6)**

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."  *Walker v. Mohiuddin*, 947 F.3d 1244, 1248-49 (10th Cir. 2020) (internal quotation marks omitted).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Cummings v. Dean*, 913 F.3d 1227, 1238 (10th Cir. 2019) (internal quotation marks omitted).  In making this determination, the "court accepts as true all well-pleaded factual allegations in [the] complaint and views those allegations in the light most favorable to the plaintiff."  *Straub v. BNSF Ry. Co.*, 909 F.3d 1280, 1287 (10th Cir. 2018).

---

[2] The Complaint does not indicate who gave Officer Yehia this instruction.  [#1].

3

In applying these legal principles, this court is mindful that Mr. Irizarry proceeds *pro se* and is entitled to a liberal construction of his papers. *Smith v. Allbaugh*, 921 F.3d 1261, 1268 (10th Cir. 2019). But the court cannot and does not act as an advocate for a *pro se* party. *United States v. Griffith*, 928 F.3d 855, 864 n.1 (10th Cir. 2019). Nor does a party's *pro se* status exempt him from complying with the procedural rules that govern all civil actions filed in this District, namely, the Federal Rules of Civil Procedure and the Local Rules of Practice for the District of Colorado. *See Requena v. Roberts*, 893 F.3d 1195, 1205 (10th Cir. 2018); *Murray v. City of Tahlequah*, 312 F.3d 1196, 1199 n.2 (10th Cir. 2008).

## II.    Qualified Immunity

The doctrine of qualified immunity protects government officials from individual liability for actions carried out while performing their duties so long as their conduct does not violate clearly established constitutional or statutory rights. *Washington v. Unified Gov't of Wyandotte Cty.*, 847 F.3d 1192, 1197 (10th Cir. 2017). To facilitate the efficient administration of public services, the doctrine functions to protect government officials performing discretionary actions and acts as a "shield from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Once a defendant has asserted a defense of qualified immunity, the burden shifts to the plaintiff who must establish that (1) the defendant violated a constitutional right, and (2) the right was clearly established at the time of the defendant's action. *Puller v. Baca*, 781 F.3d 1190, 1196 (10th Cir. 2015).

A right is clearly established if there is a Supreme Court or Tenth Circuit Court of Appeals ("Tenth Circuit") decision on point or if the weight of authority in other courts provides that the right is clearly established. *Washington*, 847 F.3d at 1197 (quoting *Thomas v. Kaven*, 765 F.3d

4

1183, 1194 (10th Cir. 2014) (internal quotation marks omitted)); *DeSpain v. Uphoff*, 264 F.3d 965, 979 (10th Cir. 2001). The purpose of the clearly established prong is to establish that an officer had sufficient notice such that he knows, or should know, what conduct will violate a constitutional right. *See Allstate Sweeping, LLC v. Black*, 706 F.3d 1261, 1265 (10th Cir. 2012). This is a particularized, fact-specific analysis as it presents an inquiry into whether a reasonable officer would have known, under the then-prevailing conditions, that his conduct violated Plaintiff's rights, and thus a court must take care not to define the right in too general of terms. *Leiser v. Moore*, 903 F.3d 1137, 1140 (10th Cir. 2018). Plaintiff's Complaint need not contain all the necessary factual allegations to sustain a conclusion that Officer Yehia violated clearly established law. *See Robbins v. Oklahoma*, 519 F.3d 1242, 1249 (10th Cir. 2008) (recognizing that a heightened pleading standard is not required). The Complaint needs to satisfy only the minimum pleading requirements articulated in *Twombly* and discussed above. *Id.*

## ANALYSIS

Officer Yehia argues that he is entitled to qualified immunity from Mr. Irizarry's lawsuit because (1) he did not violate Mr. Irizarry's First Amendment rights as a matter of law, [#14 at 5]; and (2) even if he did violate Mr. Irizarry's constitutional rights, those rights were not clearly established at the time of the traffic stop incident. [*Id.* at 8]. I consider these arguments below.

### I.    Materials Considered

To start, Officer Yehia states that Mr. Irizarry improperly introduces new factual allegations in his Response that were not included in his Complaint. [#30 at 1]. The court agrees. In his Response, Mr. Irizarry cites to trial testimony of Officer Yehia in which he discusses the traffic stop incident and the related events. *See* [#29 at 2].[3] However, when ruling on a motion to

---

[3] The Response does not indicate from where this testimony derives. *See* [#29]. Officer Yehia

dismiss, the court may consider only "the four corners of the complaint and . . . any attached exhibits or documents referenced therein whose accuracy is not disputed." *Sanchez v. Bauer*, No. 14-cv-02804-MSK-KLM, 2015 WL 5026195, at *3 (D. Colo. Aug. 26, 2015); *see also Sutton v. Utah State Sch. for the Deaf & Blind*, 173 F.3d 1226, 1236 (10th Cir. 1999) ("The court's function on a Rule 12(b)(6) motion is not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's complaint *alone* is legally sufficient to state a claim for which relief may be granted.") (emphasis added) (quotation omitted). Thus, the court cannot consider any factual allegations not made or exhibits not referenced in or incorporated by the Complaint. And Mr. Irizarry may not amend his pleading by adding new factual allegations in his Response to the Motion to Dismiss. *See Abdulina v. Eberl's Temp. Servs., Inc.*, 79 F. Supp. 3d 1201, 1206 (D. Colo. Feb. 3, 2015). For these reasons, this court's analysis focuses solely on the allegations contained in the Complaint.

## II.    Nature of Plaintiff's First Amendment Claim

The First Amendment provides that "Congress shall make no law . . . abridging the freedom of speech, or of the press." U.S. Const. amend. I.   "The Tenth Circuit recognizes two separate claims arising from First Amendment violations: (1) retaliation for engaging in protected speech; and (2) unlawful prior restraint prohibiting a citizen from making protected speech." *Berger v. City & Cty. of Denver*, No. 18-cv-01836-KLM, 2019 WL 2450955, at *4 (D. Colo. June 11, 2019).

Mr. Irizarry alleges that Officer Yehia's conduct amounted to a prior restraint on his rights to free speech and free press. [#1 at ¶ 28]. "A prior restraint on speech is conduct that restricts, or 'chills,' speech because of its content before the speech is communicated." *Berger*, 2019 WL

---

indicates that this testimony was given "in a criminal case against one of Plaintiff's cohorts, Eric Brandt, arising from the same incident [at the center of in this case]." [#30 at 1].

2450955, at *5; *see also Independence Inst. v. Gessler*, 869 F. Supp. 2d 1289, 1207 (D. Colo. 2012) ("Unlike adverse action taken in response to actual speech, a prior restraint chills potential speech before it happens."). Prior restraints can take multiple forms: traditional prior restraint claims "involve judicial orders or administrative regulations 'forbidding certain communications' prior to [the communications] being made," but "courts have found that more informal conduct can also rise to the level of a prior restraint." *Berger*, 2019 WL 2450955, at *5 (quoting *Dirks v. Bd. of Cty. Comm'rs of Ford Cty.*, No. 15-cv-7997-JAR, 2016 WL 2989240, at *5 (D. Kan. May 24, 2016)). Indeed, "[a]lthough much less commonly found in the case law, an impermissible prior restraint can also be found where *news gathering* (as opposed to speech) is unreasonably restricted in advance." *Bralley v. Albuquerque Pub. Sch. Bd. of Educ.*, No. 13-cv-0768 JB/SMV, 2015 WL 13666482, at *3 (D.N.M. Feb. 25, 2015) (emphasis in original), *report and recommendation adopted*, 2015 WL 1568834 (D.N.M. Mar. 30, 2015). In evaluating a prior-restraint claim based on informal conduct, the pertinent question is whether the conduct has "a chilling effect on the exercise of a plaintiff's First Amendment rights" which "arises from an objectively justified fear of real consequences." *Brammer-Hoelter v. Twin Peaks Charter Acad.*, 602 F.3d 1175, 1182 (10th Cir. 2010). Mere allegations "that the restraint has a subjective chilling effect on [the plaintiff's] speech or association" are insufficient to state a claim. *Id.*[4]

---

[4] Officer Yehia argues that Plaintiff has failed to "establish any of the prerequisites for a prior restraint claim under the First Amendment." [#14 at 6]. Based on Officer Yehia's briefing, the court presumes that the prerequisites to which he refers are the requisite elements for "traditional" prior restraint claims: (1) "the speaker must apply to the decision maker for approval before engaging in the proposed speech"; (2) "the decision maker must be empowered to determine whether the applicant should be granted permission on the basis of its review of the content of the proposed communication"; (3) "approval of the application requires the decision maker's affirmative action"; and (4) "approval is not a matter of routine, but involves appraisal of facts, the exercise of judgment, and the formation of an opinion." *Berger*, 2019 WL 2450955, at *5; *see also* [#30 at 5 (arguing that "[i]ndisputably, the factual allegations of the Complaint occurred without any prior involvement of a 'decision maker'")]. However, the court finds that these

Although Mr. Irizarry frames his claim as a prior restraint claim, Officer Yehia suggests in his Motion that the Complaint raises allegations of First Amendment retaliation rather than a prior restraint. [#14 at 6-7]. The court agrees that, construing Plaintiff's Complaint liberally, it can be read to assert a retaliation claim under the First Amendment. *See, e.g.*, [#1 at ¶ 7 (alleging that Officer Yehia's motivations were to "punish plaintiff for exercising his rights"); [*id.* at ¶ 26 ("Mr. Irizarry was . . . gathering content on matters of public concern . . . when [Officer] Yehia interfered with his ability to do so without any legal justification to do so."). In order to state a claim of First Amendment retaliation, Mr. Irizarry must assert factual allegations demonstrating "(1) that the plaintiff was engaged in constitutionally protected activity; (2) that the defendant's actions caused the plaintiff to suffer an injury that would chill a person of ordinary firmness from continuing to engage in that activity; and (3) that the defendant's adverse action was substantially motivated as a response to the plaintiff's exercise of constitutionally protected conduct." *Shero v. City of Grove*, 510 F.3d 1196, 1203 (10th Cir. 2007).

---

elements are inapplicable to Plaintiff's prior restraint claim. Mr. Irizarry does not allege a "traditional" prior restraint claim—instead, he asserts that Officer Yehia's informal conduct constituted a prior restraint, which can serve as the basis for his claim. *Multimedia Holdings Corp. v. Circuit Ct. of Fla., St. Johns Cty.*, 544 U.S. 1301, 1306 (2005) ("A prior restraint may take many forms, including . . . informal procedures undertaken by officials intended to chill expression"). The court finds that Plaintiff need not allege a formal application and denial process with respect to the asserted speech in order to state a prior restraint claim. *See Berger*, 2019 WL 2450955, at *6 ("Given that Plaintiff has not pled any of the four elements traditionally required to bring a prior restraint claim, the Court examines whether Defendants' informal conduct . . . amounted to an unlawful prior restraint on his speech."); *see also Dirks*, 2016 WL 2989240, at *5 (finding that the plaintiff had alleged an informal prior restraint claim by alleging that his government employer instructed him to lie during a deposition and threatened him with consequences if he did not plead the Fifth Amendment at the deposition, and that plaintiff then refused to answer questions at the deposition). Thus, the court is respectfully not persuaded my Officer Yehia's argument that Mr. Irizarry's failure to plead the traditional elements of a prior-restraint claim is fatal to his First Amendment claim.

Because the court finds that Plaintiff's Complaint can be construed to raise a retaliation claim, the court will liberally consider the Complaint as raising a First Amendment claim alleging both a prior restraint and retaliation. In order to state a First Amendment claim based on either retaliation or an informal prior restraint, the plaintiff must sufficiently allege that the plaintiff was, or was about to be, engaged in constitutionally protected activity and that the plaintiff's right to engage in that activity was violated. *Id.*; *Berger*, 2019 WL 2450955, at *5.

### III.   Constitutional Violation

First, Officer Yehia asserts that he is entitled to qualified immunity because Mr. Irizarry's constitutional rights were not violated. [#14 at 5]. Specifically, Officer Yehia argues that "videotaping a police officer's actions in public spaces is not protected activity under the First Amendment in the [Tenth] Circuit" and any hindrance of Mr. Irizarry's attempts to film the police did not result in a constitutional violation. [*Id.* at 7-8]. Mr. Irizarry responds that Officer Yehia's conduct violated the law because it violated Colo. Rev. Stat. §§ 16-3-311[5] and 13-21-128.[6] [#29 at 3]. According to Plaintiff, this precludes dismissal of his case. [*Id.*].

The court respectfully disagrees with Mr. Irizarry's assertion that the Colorado statutes cited by Plaintiff are relevant here. Mr. Irizarry does not assert any state law claims against Officer Yehia; instead, his sole claim arises under the First Amendment. *See* [#1]. The fact that Colorado state law permits a cause of action against a peace officer's employer if that peace officer

---

[5] "A person has the right to lawfully record any incident involving a peace officer and to maintain custody and control of that recording and the device used to record the recording. A peace officer shall not seize a recording or recording device without consent, without a search warrant or subpoena, or without a lawful exception to the warrant requirement." Colo. Rev. Stat. § 16-3-311(1).

[6] "Notwithstanding any other remedies, a person has a right of recovery against a peace officer's employing law enforcement agency if a person attempts to or lawfully records an incident involving a peace officer and . . . [a] peace officer intentionally interferes with the person's lawful attempt to record an incident involving a peace officer." Colo. Rev. Stat. § 13-21-128(1)(a)(III).

intentionally interferes with a person's lawful attempt to record an interaction with the peace officer has no bearing on whether Officer Yehia's conduct violated the First Amendment; a § 1983 claim must "allege the violation of a right secured by the Constitution or law of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988); *see also Matson v. Kansas*, No. 11-3192-SAC, 2012 WL 28073, at *5 (D. Kan. Jan. 5, 2012) ("[V]iolations of a state statute . . . do not amount to federal constitutional violations, and thus fail to state a claim for relief in federal court under 42 U.S.C. § 1983."). Thus, any alleged violations of state law have no bearing on the court's analysis regarding whether Officer Yehia violated Mr. Irizarry's constitutional rights.

Thus, the court turns to Officer Yehia's argument that, as a matter of law, "videotaping a police officer's actions in public spaces is not protected activity under the First Amendment in the [Tenth] Circuit." [#14 at 7]. In support of his argument, Officer Yehia relies on *Mocek v. City of Albuquerque*, 813 F.3d 912, 931 (10th Cir. 2015). [*Id.*]. This court respectfully disagrees that *Mocek* stands for the proposition that videotaping a police officer's actions in public spaces is not a protected First Amendment activity; indeed, it does not appear that the Tenth Circuit reached that precise question. In *Mocek*, the plaintiff asserted a § 1983 claim arguing that his First Amendment rights were violated when he was arrested for recording TSA agents at an airport during his security check. 813 F.3d at 920-21. The plaintiff encouraged the Tenth Circuit to follow other Circuit courts in recognizing a First Amendment protection "for creating audio and visual recordings of law enforcement officers in public places." *Id.* at 930. The Tenth Circuit declined to consider whether the plaintiff was engaged in protected activity, observing that an airport is a *nonpublic* forum and stating that "even if [it] agreed there is a First Amendment right to record law enforcement officers in public, [it] would still need to determine whether that conduct is

protected at an airport security checkpoint," and ultimately concluding that it "need not answer this question because [the plaintiff could not] satisfy the third prong of a retaliation claim: that the government's actions were substantially motivated in response to [the plaintiff's] protected speech." *Id.* at 931.

More recently, the Tenth Circuit considered whether a First Amendment right to record police officers performing their official duties in public spaces was *clearly established* as of 2014. *See Frasier v. Evans*, 992 F.3d 1003, 1019 (10th Cir. 2021). The court concluded that such a right was not clearly established in 2014. *Id.* at 1023. However, in so doing, the court "[did] not consider, nor opine on, whether [the plaintiff] actually had a First Amendment right to record the police performing their official duties in public spaces," noting that it was "influenced by the fact that neither party disputed that such a right exists (nor did the district court question its existence)" and indicating that it sought to avoid the risk of "glibly announcing new constitutional rights in dictum." *Id.* at 1020 n.4 (quotation and alteration marks omitted). Thus, the Tenth Circuit has not decided whether a First Amendment right exists to record police officers performing their official duties in public spaces.

However, several other Circuit courts have found that the act of recording law enforcement officers implicates the First Amendment. *See, e.g.*, *Glik v. Cunniffe*, 655 F.3d 78, 82 (1st Cir. 2011) ("The filming of government officials engaged in their duties in a public place, including police officers performing their responsibilities, fits comfortably within [First Amendment] principles."); *Fields v. City of Philadelphia*, 862 F.3d 353, 359 (3d Cir. 2017) ("[R]ecording policy activity in public falls squarely within the First Amendment right of access to information."); *Turner v. Lieutenant Driver*, 848 F.3d 678, 688 (5th Cir. 2017) ("We conclude the First Amendment principles, controlling authority, and persuasive precedent demonstrate that a First

Amendment right to record the police does exist, subject only to reasonable time, place, and manner restrictions."); *ACLU of Illinois v. Alvarez*, 679 F.3d 583, 595 (7th Cir. 2012) ("The act of *making* an audio or audiovisual recording is necessarily included within the First Amendment's guarantee of speech and press rights as a corollary of the right to disseminate the resulting recording.") (emphasis in original); *Smith v. City of Cumming*, 212 F.3d 1332, 1333 (11th Cir. 2000) ("As to the First Amendment claim under Section 1983, we agree with the Smiths that they had a First Amendment right, subject to reasonable time, manner and place restrictions, to photograph or videotape police conduct.").  Simply put, the Circuit courts which have reached this issue "are not split . . . on whether the right exists." *Turner*, 848 F.3d at 687.

Against this out-of-Circuit authority, this court is persuaded that it is appropriate to decide this preliminary question and concludes that a right to record police officers performing their official duties in public, subject to reasonable time, place, and manner restrictions, exists under the First Amendment.  Although the Tenth Circuit has not expressly recognized such a right, it has recognized that "[n]ews gathering is an activity protected by the First Amendment." *J. Pub. Co. v. Mechem*, 801 F.2d 1233, 1236 (10th Cir. 1986).  And other Circuit courts have held that this right is not limited to professional journalists or established media companies: "The First Amendment right to gather news is, as the Court has often noted, not one that inures solely to the benefit of the news media; rather, the public's right of access to information is coextensive with that of the press." *Glik*, 655 F.3d at 83.  Moreover, the Supreme Court has indicated that "there is practically universal agreement that a major purpose of the First Amendment was to protect the free discussion of governmental affairs," *Ariz. Free Enter. Club's Freedom Club PAC v. Bennett*, 564 U.S. 721, 755 (2011) (quotation and alteration marks omitted), and that "dissemination of information relating to alleged governmental misconduct . . . '[lies] at the core of the First

Amendment.'"   *Gentile v. State Bar of Nevada*, 501 U.S. 1030, 1034-35 (1991) (quoting *Butterworth v. Smith*, 494 U.S. 624, 632 (1990)).

  With these principles in mind, the court agrees that "[g]athering information about government officials in a form that can readily be disseminated to others serves a cardinal First Amendment interest in protecting and promoting 'the free discussion of governmental affairs.'" *Glik*, 655 F.3d at 82 (quoting *Mills v. Alabama*, 384 U.S. 214, 218 (1966)).   Mr. Irizarry alleges that he recorded government officials performing their official duties in a public space for the purpose of disseminating the collected information to the public.   [#1 at ¶¶ 3, 9, 11, 25, 26].   Indeed, Mr. Irizarry describes himself as a "journalist who regularly publishes stories about police brutality and conduct or misconduct."   [*Id.* at ¶ 24].   He further alleges that Officer Yehia intentionally turned on all of his lights and positioned himself in front of Mr. Irizarry to purposefully obstruct Mr. Irizarry's ability to record the DUI stop.   [*Id.* at ¶ 14].   Plaintiff further alleges that Defendant took these actions in response to his recording, as he readjusted his position to make sure he was obstructing the camera view of the sobriety test and, after being criticized for such actions, "pulled out a large, extremely bright flashlight and began to shine it in both the plaintiff's camera as well as Mr. Brandt's saturating the camera sensors."   [*Id.* at ¶¶ 14-16].   In addition, Mr. Irizarry alleges that, when Officer Yehia was instructed to leave, Officer Yehia drove right at Messrs. Irizarry and Brandt, gunned his cruiser directly at Mr. Brandt, and repeatedly blasted his air horn at Messrs. Irizarry and Brandt.   [*Id.* at ¶¶ 20-22].   Taking these facts as true as it must at this juncture, the court concludes that Mr. Irizarry has alleged sufficient facts at this stage to sufficiently allege a First Amendment violation based on either a theory of prior restraint or retaliation, i.e., that he was recording police conduct in a public forum and Officer Yehia's conduct did not amount to a reasonable time, manner, or place restriction.   Thus, the court turns its analysis to whether the First

Amendment right was clearly established in 2019 "such that a reasonable person in the defendant's position would have known that his conduct violated that right." *Maestas v. Lujan*, 351 F.3d 1001, 1007 (10th Cir. 2003).

## IV.    Clearly Established Law

"For a constitutional right to be clearly established, the contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Wilson v. Montano*, 715 F.3d 847, 852 (10th Cir. 2013) (brackets, citation, and internal quotation marks omitted).  A plaintiff may satisfy this burden "when a Supreme Court or Tenth Circuit decision is on point, or if the clearly established weight of authority from other courts shows that the right must be as the plaintiff maintains." *Washington*, 847 F.3d at 1197 (quoting *Thomas v. Kaven*, 765 F.3d 1183, 1194 (10th Cir. 2014) (internal quotation marks omitted)).  But a plaintiff need not provide case law that is factually identical to his case if the constitutional violation is "obviously egregious . . . in light of prevailing constitutional principles," *A.M. v. Holmes*, 830 F.3d 1123, 1135-36 (10th Cir. 2016), and the Tenth Circuit has noted that a defendant may be on notice that her conduct violates clearly established law even in novel factual circumstances.  *See Casey v. City of Fed. Heights*, 509 F.3d 1278, 1284 (10th Cir. 2007).

Drawing on these principles, the Tenth Circuit has expounded on the parameters of demonstrating a clearly established right:

> A constitutional right is clearly established when a Tenth Circuit precedent is on point, making the constitutional violation apparent.  This precedent cannot define the right at a high level of generality.  Rather, the precedent must be particularized to the facts.  But even when such a precedent exists, subsequent Tenth Circuit cases may conflict with or clarify the earlier precedent, rendering the law unclear.
>
> A precedent is often particularized when it involves materially similar facts.  But the precedent may be adequately particularized even if the facts differ, for general precedents may clearly establish the law when the defendant's conduct obviously violates the law.  Thus, a right is clearly established when a precedent involves

materially similar conduct or applies with obvious clarity to the conduct at issue.

By requiring precedents involving materially similar conduct or obvious applicability, we allow personal liability for public officials only when our precedent puts the constitutional violation beyond debate. Thus, qualified immunity protects all officials except those who are plainly incompetent or those who knowingly violate the law.

*Apodaca v. Raemisch*, 864 F.3d 1071, 1076 (10th Cir. 2017) (internal brackets, citations, and quotation marks omitted).

Importantly, "[t]he clearly-established inquiry focuses on whether the contours of the constitutional right were so well-settled in the context of the particular circumstances that a 'reasonable official *would have understood that what he is doing violates that right*.'" *Estate of Carrigan v. Park Cty. Sheriff's Office*, 381 F. Supp. 3d 1316, 1327 (D. Colo. 2019) (quoting *Messerschmidt v. Millender*, 565 U.S. 535, 546 (2012) (emphasis added)). Although a "precise factual correlation between the then-existing law and the case at hand" is not necessary, *Patrick v. Miller*, 953 F.2d 1240, 1249 (10th Cir. 1992) (citation and internal quotation marks omitted), "there must be a substantial correspondence between the conduct in question and prior law allegedly establishing that the defendant's actions were clearly prohibited." *Duncan v. Gunter*, 15 F.3d 989, 992 (10th Cir. 1994) (quotation omitted).

As acknowledged above, Plaintiff's Complaint does not indicate in what year the alleged violation occurred. This complicates the court's analysis, which focuses on whether the constitutional right was clearly established *at the time of the violation*. *Puller*, 781 F.3d at 1196. However, as discussed above, the court presumes that the incident in question occurred in 2019 and therefore focuses its analysis on whether the right was clearly established at that time. *See supra* n.1.

First, the court notes that there is no on-point Supreme Court or Tenth Circuit case that

satisfies the court that this right was so clearly established.  As set out above, the Tenth Circuit has

yet to recognize that a First Amendment right to record the police exists, *Mocek*, 813 F.3d at 931;

*Frasier*, 992 F.3d at 1020 n.4,[7] and the Supreme Court has not addressed whether such a right

exists, either.  As a result, the court turns to whether "the clearly established weight of authority

from other courts shows that the right must be as the plaintiff maintains."  *Washington*, 847 F.3d

at 1197.

Mr. Irizarry directs the court to a number of cases, many of which have been previously

cited in this Order, to support his assertion that Officer Yehia violated a right that was clearly

established in 2019.  [#29 at 3-4, 5-6].[8]  But the court is "[m]indful that the law must be clearly

established in a *particularized* sense," and "looks to the specific conduct [in those cases] analogous

to that presented here."  *Curtis v. Lloyd*, No. 17-cv-00046-MSK-KMT, 2019 WL 4450214, at *5

(D. Colo. Sept. 17, 2019) (quotation omitted).  Although there are a number of pre-2019 Circuit

cases *identifying* a First Amendment right to record the police in public spaces while the police are

performing their official duties, the court finds that Mr. Irizarry has failed to direct the court to a

case which demonstrates that Officer Yehia was on notice that his conduct—standing in front of

---

[7] In addition, Tenth Circuit recently ruled that, as of 2014, this First Amendment right to record police officers in public was not clearly established.  *Frasier*, 992 F.3d at 1022-23.  Specifically, the Tenth Circuit noted that, although a number of Circuit courts had, as of 2014, ruled that there was a First Amendment right to record the police, "the out-of-circuit authorities appear[ed] to be split on the clearly-established-law question."  *Id.* at 1023.  Thus, the court determined that "those [Circuit] decisions do not indicate that this right was clearly established law in our circuit in August 2014."  *Id.* at 1022.  While the court is mindful of the Tenth Circuit's analysis in *Frasier*, the *Frasier* decision is not determinative of the court's inquiry into whether the right was clearly established as of 2019.

[8] For purposes of concision, the court addresses only the cases cited by Plaintiff which specifically address the First Amendment right to record the police in public settings while they perform official duties, rather than the cases that discuss the right of the press generally.  *Duncan*, 15 F.3d at 992 ("[T]here must be a substantial correspondence between the conduct in question and prior law allegedly establishing that the defendant's actions were clearly prohibited.").

and shining a flashlight into Plaintiff's camera for an unknown period of time—violated Mr.

Irizarry's First Amendment rights.  In other words, the court concludes that the cases cited by

Plaintiff do not demonstrate "that a reasonable official would understand that what he is doing

violates [the constitutional] right."  *Wilson*, 715 F.3d at 852.

Indeed, each of the cases cited by Mr. Irizarry is distinguishable in significant ways.  For

example, in *Glik*, the First Circuit found that an individual's First Amendment rights were violated

when he was *arrested* for filming several police officers carrying out an arrest.  655 F.3d at 79, 84.

And in *Turner*, the Fifth Circuit considered whether a First Amendment right to record the police

exists in the context of reviewing an individual's *detainment* by police for recording a police

station.  848 F.3d at 686.  Finally, in *Alvarez*, the American Civil Liberties Union ("ACLU") sued

the State's Attorney to block the enforcement of an "eavesdropping law," which made it a crime

to record all or part of any oral conversation without the consent of all parties to the conversation.

679 F.3d at 587.  The Seventh Circuit, finding a *credible threat of prosecution* for engaging in

First Amendment protected activity, directed the district court to grant a preliminary injunction

barring the enforcement of the eavesdropping statute against the ACLU, which planned to record

police officers without their consent while those officers were performing their official duties in

public places.  *Id.* at 592-93, 608.[9]

Each of the cases cited by Mr. Irizarry in support of his argument that the right was clearly

---

[9] Circuit decisions not cited by Plaintiff but finding a First Amendment right to film the police similarly do not demonstrate that standing in front of a camera or shining a flashlight into a camera lens constitutes a First Amendment violation.  In *Fields*, one plaintiff was arrested, and his phone was confiscated, after he filmed the police.  862 F.3d at 356.  The other plaintiff was filming an arrest when she was "pushed . . . and pinned . . . against a pillar for one to three minutes, which prevented her from observing or recording the arrest."  *Id.*  The Eleventh Circuit in *Smith* did not discuss the underlying factual circumstances in finding the existence of a First Amendment right. *See* 212 F.3d at 1333.

established concerns whether the detainment, arrest, or prosecution of an individual for filming the police in public spaces would violate the individual's First Amendment rights. Plaintiff need not present cases which are factually identical to the instant case, *Holmes*, 830 F.3d at 1135-36, and "factual novelty alone will not automatically provide a state official with the protections of qualified immunity." *Marquez v. Norton*, No. 09-cv-02584-PAB-MJW, 2010 WL 4388307, at *6 (D. Colo. Oct. 29, 2010). However, "there must be a substantial correspondence between the conduct in question and prior law allegedly establishing that the defendant's actions were clearly prohibited," *Duncan*, 15 F.3d at 992, and there is a significant and material factual gap between the actual or threatened arrest, detainment, or prosecution of an individual for filming the police and a police officer's act of standing in front of a camera or shining a light into a camera to allegedly obstruct the recording. Because the precedent cited by Mr. Irizarry is not "particularized to the facts," *Apodaca*, 864 F.3d at 1076, and because the "dispositive question is whether the violative nature of *particular* conduct is clearly established." *Mullenix v. Luna*, 577 U.S. 7, 12 (2015) (quotation omitted) (emphasis in original), the court finds that Mr. Irizarry has not met his burden of citing authority demonstrating that it was clearly established in 2019 that Officer Yehia's actions violated Mr. Irizarry's First Amendment rights.

Moreover, the court's independent research has unearthed very few federal cases discussing whether a law enforcement official's obstruction of a civilian's camera violates the First Amendment right to record the police. In *Asociación de Periodistas de Puerto Rico v. Mueller*, No. 06-1931 (JAF), 2007 WL 5312566 (D.P.R. June 12, 2007), *aff'd in part, vacated in part on other grounds, remanded*, 529 F.3d 52 (1st Cir. 2008), a number of individuals and media organizations alleged that their First Amendment rights had been violated when agents from the Federal Bureau of Investigation ("FBI") "intentionally interfered with the gathering of information

and news" by "violently knock[ing] aside microphones and cameras in an attempt to prevent [an] event from being recorded" and when one agent "used his hand to block a video camera lens." *Id.* at *4. In the summary judgment context, the court concluded that the plaintiffs had failed to allege a violation of their First Amendment rights, noting that the plaintiffs "[d]id not contend that law enforcement instructed them to stop recording the event, . . . that the agents threatened to arrest them," or "that the agents asked Plaintiffs to turn over their cameras or film in violation of the First Amendment." *Id.* The court indicated that it was unable to find a case in which a court found a First Amendment violation "based on law enforcement agents pushing away a microphone or temporarily seeking to obstruct recording by placing a hand in front of a camera." *Id.*

Similarly, in *Reno v. Nielson*, No. 19-00418 ACK-WRP, 2020 WL 2309250 (D. Ha. May 8, 2020), the plaintiff alleged that a police officer had violated his First Amendment rights by hindering his ability to record an interaction with that police officer. *Id.* at *1. Specifically, the plaintiff alleged that, once the police officer realized the plaintiff was recording the interaction, the officer "stood too close to [the plaintiff], thereby obstructing the view of the camera." *Id.* at *9. The court noted that the plaintiff "was not prevented from filming, but only had some portion of the camera's view blocked by [the police officer's] body." *Id.* Ultimately, the court concluded that "standing uncomfortably close . . . all the while permitting Plaintiff to continue filming, . . . would not chill a person of ordinary firmness from filming police activity in the future." *Id.*

The court finds neither *Asociación de Periodistas de Puerto Rico* nor *Reno* helpful to Plaintiff's case, as both cases declined to find a First Amendment violation when a law enforcement officer obstructed an individual's camera when that individual was attempting to record a public interaction. In sum, the court finds that the weight of authority does not establish that the violative nature of Officer Yehia's conduct was clearly established in 2019 so as to "put[]

the constitutional violation beyond debate." *Apodaca*, 864 F.3d at 1076.

In the alternative, Plaintiff appears to argue that, even if there is no binding case law with materially similar facts, the law was nevertheless clearly established because certain constitutional precedent establishing the First Amendment right of the press applies "with obvious clarity." *See* [#29 at 4 (quoting *Lowe v. Raemisch*, 864 F.3d 1205, 1210 (10th Cir. 2017)]. The court respectfully disagrees. The cases cited by Mr. Irizarry, as well as Mr. Irizarry's arguments, focus on general statements of law concerning the right of the press to photograph and record in public places. *See* [*id.* at 4-5]. But the Supreme Court has consistently stated that clearly established law cannot be defined "at a high level of generality." *Ashcroft v. al-Kidd*, 563 U.S. 731, 742 (2011). The general notion that the press has the right to record in public spaces does not demonstrate whether it is clearly established that a police officer's act of standing in front of or shining a light into a camera violates that right. *Cf. id.* ("The general proposition, for example, that an unreasonable search or seizure violates the Fourth Amendment is of little help in determining whether the violative nature of particular conduct is clearly established."); *cf. Marquez*, 2010 WL 4388307, at *6 (finding that qualified immunity applied where the defendant's conduct "[did] not so obviously run afoul of law that an assertion of qualified immunity [could] be overcome based solely on the Fourth Amendment's general prohibition against arrests without probable cause."). The court cannot conclude that the general proposition that the press has a right to record in public rendered Officer Yehia's conduct unconstitutional "with obvious clarity."

For these reasons, the court finds that Officer Yehia is entitled to qualified immunity from Mr. Irizarry's lawsuit.[10] As a result, the court will grant Officer Yehia's motion to dismiss based

---

[10] Plaintiff's Complaint contains allegations that, after shining his flashlight at Mr. Irizarry's camera, Officer Yehia "drove right at [Mr. Irizarry] and Mr. Brandt, and sped away," and "blasted his air horn at Mr. Irizarry and Mr. Brandt." [#1 at ¶ 20-21]. It does not appear that Mr. Irizarry

on qualified immunity grounds.

**V.    Prejudice**

"Generally, a court will not dismiss a pro se litigant's action without leave to amend."

*Alfaro v. Cty. of Arapahoe*, No. 18-cv-00737-MSK-NYW, 2018 WL 5259609, at *2 (D. Colo.

May 2, 2018), *report and recommendation adopted*, 2018 WL 4577253 (D. Colo. Sept. 25, 2018).

The Tenth Circuit has instructed that if "it is at all possible that the party against whom the

dismissal is directed can correct the defect in the pleading or state a claim for relief, the court

should dismiss with leave to amend," particularly in cases where the "deficiencies in a complaint

are attributable to oversights likely the result of an untutored pro se litigant's ignorance of special

pleading requirements." *Reynoldson v. Shillinger*, 907 F.2d 124, 126 (10th Cir. 1990).  In these

circumstances, "dismissal of the complaint without prejudice is preferable." *Id.*  "[D]ismissal of a

pro se complaint for failure to state a claim is proper only where it is obvious that the plaintiff

cannot prevail on the facts he has alleged and it would be futile to give him an opportunity to

amend." *Gee v. Pacheco*, 627 F.3d 1178, 1195 (10th Cir. 2010).

Here, the court's ruling of dismissal is not based on "deficiencies . . . attributable to . . . an

---

bases his First Amendment claim on this conduct. *See, e.g.*, [*id.* at ¶ 28 ("By purposefully
[interfering] with . . . and obstructing [Mr. Irizarry's] ability to gather content[,] . . . [Officer]
Yehia's conduct constituted a blatant prior restraint on [Plaintiff's] right to free speech and free
press")].  Moreover, Mr. Irizarry does not indicate in his Response that his First Amendment claim
is based on these allegations and makes no argument that such conduct violated his constitutional
rights.  *See* [#29 at 5, 7 (focusing only on Officer Yehia's acts of obstructing Plaintiff's camera
and asserting that Officer Yehia violated his rights by "blocking and interfering with [his] ability
to record")].  While the court must construe a *pro se* plaintiff's filings liberally, a court may not
"construct arguments or theories for the plaintiff in the absence of any discussion of those issues."
*Drake v. Fort Collins*, 927 F.2d 1156, 1159 (10th Cir. 1991).  Moreover, "[the] court may not
assume that a plaintiff can prove . . . a defendant has violated laws in ways that a plaintiff has not
alleged." *ElHelbawy v. Pritzker*, No. 14-cv-01707-CBS, 2015 WL 5535246, at *1 (D. Colo. Sept.
21, 2015).  Because there is no indication in Mr. Irizarry's filings that he asserts his First
Amendment claim on these facts, the court will not analyze whether he states a claim based on
those facts.

untutored pro se litigant's ignorance of special pleading requirements." *Reynoldson*, 907 F.2d at 126. The court's ruling is based on the fact that Officer Yehia is entitled to qualified immunity from Mr. Irizarry's lawsuit because Mr. Irizarry has not met his burden of demonstrating that Officer Yehia violated clearly established law. In these circumstances, leave to amend would be futile. *Session v. Clements*, No. 14-cv-02406-PAB-KLM, 2016 WL 820978, at *6 (D. Colo. Jan. 21, 2016), *report and recommendation adopted*, 2016 WL 814715 (D. Colo. Mar. 1, 2016). The court finds that dismissal of Mr. Irizarry's Complaint with prejudice is appropriate. *See Watkins v. Donnelly*, 551 F. App'x 953, 960-61 (10th Cir. 2014) (unpublished) (affirming dismissal with prejudice where plaintiff failed to allege violation of clearly established right); *Lybrook v. Members of the Farmington Mun. Schs. Bd. of Educ.*, 232 F.3d 1334, 1341 (10th Cir. 2000) (affirming dismissal with prejudice where dismissal was based on qualified immunity grounds).

## CONCLUSION

For the reasons stated herein, **IT IS ORDERED** that:

(1)   Defendant's Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(6) [#14] is **GRANTED**;

(2)   Plaintiff's Complaint is **DISMISSED with prejudice**;

(3)   Each Party shall bear their own costs;[11] and

(4)   The Clerk of Court shall **TERMINATE** this matter accordingly.

---

[11] While costs should generally "be allowed to the prevailing party," Fed. R. Civ. P. 54(d)(1), the district court may in its discretion decline to award costs where a "valid reason" exists for the decision. *See, e.g., In re Williams Sec. Litig.-WCG Subclass*, 558 F.3d 1144, 1147 (10th Cir. 2009) (citations omitted). Given Plaintiff's *pro se* status, the court finds that it is appropriate for each Party to bear their own costs associated with this action.

DATED:  June 8, 2021                    BY THE COURT:

_____
Nina Y. Wang
United States Magistrate Judge